UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS CASTILLO, (A094-334-864),

Petitioner,

v.

CHRISTOPHER CHESTNUT et. al.,

Respondents.

No. 1:26-cv-05925-DC-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of Honduras, first came to the United States in 1998 and was granted Temporary Protected Status from 1999-2023. ECF No. 1 at 4; 1-1 at 2-7; 6-1 at 1. He and his wife, a U.S. Citizen, have five U.S. citizen children. ECF No. 1-1 at 21-30. On April 29, 2024, Petitioner's wife submitted an immigrant visa petition on his behalf and on July 14, 2025, Petitioner filed an application to adjust his status to that of a lawful permanent resident. Id. at 9, 17-19. Petitioner owns and operates three businesses in the U.S. Id. at 32-34.

Petitioner has four criminal convictions. In 2015, 2016, and 2022 he was convicted of alcohol-related offenses: Utah Code Ann. § 41-6A-502.5(1), impaired driving; § 76-9-701,

intoxication; and § 41-6A-526, driving under the influence of alcohol. ECF No. 6-3. In 2024 he was convicted under Utah Code Ann. § 76-5-103(3)(A) for aggravated assault.[1] Id.; ECF No. 6-4.

On February 25, 2025, U.S. Immigration and Customs Enforcement (ICE) took Petitioner into custody. ICE charged him administratively under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (an immigrant who, at the time of application for admission, did not have valid documents to enter the U.S.) and initiated removal proceedings against him. ECF No. 6-1. They then released Petitioner and enrolled him into the Intensive Supervision Appearance Program (ISAP). ECF No. 1 at 3. Petitioner complied with all terms of his release and, as a result, ICE removed Petitioner's ankle monitor in September 2025 and instead had him report via a phone app and in-person check-ins. Id. at 3, 4. When Petitioner appeared for a scheduled ISAP check-in on June 23, 2026, ICE took him into custody again. ECF No. 6-1. Petitioner did not receive any prior notice of ICE's intention to re-detain him nor an explanation as to why his release was revoked. ECF No. 1 at 4.

Petitioner filed a petition for writ of habeas corpus on July 28, 2026, alleging his current detention after a prior release violates his Fifth Amendment right to due process and his Fourth Amendment right against unlawful seizure. ECF No. 1. Respondents replied that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A) for having at least one conviction for a crime involving moral turpitude (CMT) and that he must first exhaust administrative remedies by seeking a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999) if he wishes to dispute his detention. ECF No. 6. Petitioner countered that Respondents have not met their burden to demonstrate that § 1226(c) applies and that a Joseph hearing would not remedy the due process violation, which Respondents did not address. ECF No. 7.

/ / /

[1] Respondents allege an additional outstanding charge for aggravated assault in December 2024. It appears that the FBI RAP sheet entry for this incident refers to the date Petitioner began his sentence for the October 2024 conviction and is not a new or additional charge. See ECF No. 6-3 at 11-12.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps. The first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

### B. Statutory Immigration Framework

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While § 1226(a) allows the government to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added). See also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General ("AG") deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk).

## III. Analysis

### A. Detention Authority

Respondents allege Petitioner is subject to detention pursuant to 8 U.S.C. § 1226(c)(1)(A),

which requires detention for a noncitizen who is inadmissible by reason of having committed any offense covered in § 1182(a)(2) including those who have been convicted of a crime involving moral turpitude (CIMT). 8 U.S.C. §§ 1226(c)(1)(A); 1182(a)(2). However, Respondents do not specify which criminal conviction(s) might render Petitioner subject to § 1226(c)(1)(A). They state, vaguely, that Petitioner has been convicted of "multiple offenses of Driving under the Influence and multiple Aggravated Assault convictions." ECF No. 6 at 3. They provide only an FBI RAP sheet and sentencing minutes for the 2024 aggravated assault conviction. ECF No. 6-3; 6-4. The Notice to Appear makes no factual allegations about any CIMTs, nor does it charge Petitioner under § 1182(a)(2). [2] ECF No. 6-2. Respondents do not articulate for this Court which of Petitioner's convictions they allege are CIMTs nor do they cite to any authority supporting such a conclusion.

Petitioner's response discusses which of his convictions may or may not be CIMTs and outlines the categorical approach necessary to determine whether a conviction fits the CIMT definition. Respondents contend that an Immigration Judge can consider those arguments at a Joseph hearing, and that Petitioner must pursue that administrative remedy before bringing this habeas petition. The undersigned declines to engage in a categorical analysis here, not necessarily because of the exhaustion issue,[3] but because Respondents have not articulated which conviction(s) it believes are CIMTs. Without even a clear statement from Respondents as to which conviction(s) might justify detention under § 1226(c)(1)(A), the undersigned cannot find that Petitioner is subject to detention under § 1226(c). Because Petitioner is in removal

---

[2] While it is not necessary for the NTA to reflect the relevant criminal offense or charge of removability that renders the noncitizen subject to mandatory detention, the noncitizen must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention. In re Kotliar, 24 I. & N. Dec. 124, 127 (BIA 2007). Here, not only has the government failed to give Petitioner required notice of the basis for detention, it has also failed to articulate it for the Court.

[3] As to exhaustion, the undersigned finds that it should be waived, as Petitioner raises a substantial constitutional question. Laing v. Ashcroft, 370 F.3d 994, 1001 (9th Cir. 2004) (quoting Beharry v. Ashcroft, 329 F.3d 51, 62 (2nd Cir. 2003)). The primary issue in this matter is not whether Petitioner is subject to mandatory detention; it's whether re-detaining him after prior release, absent changed circumstances, violated the Due Process Clause.

proceedings and the record does not establish a clear basis for § 1226(c)(1)(A) applicability, the undersigned finds that Petitioner's detention is governed by § 1226(a) and will examine the due process claim under that lens.

**B. Due Process**

In reviewing Petitioner's due process challenge, the Court turns first to the question of whether Petitioner has a protected liberty interest from detention after a prior release. The District Judge assigned to this case has found that noncitizens who, like Petitioner, were previously detained pursuant to § 1226(a) then released on their own recognizance have a protected liberty interest in their continued release, entitling them to due process protections. Singh v. Chestnut, No. 1:26-cv-01400-DC-CSK (HC), 2026 WL 498335 (E.D. Cal. Feb. 23, 2026); Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026); Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, 2026 WL 309563, (E.D. Cal. Feb. 5, 2026). Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

Having so found, the Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**i. Private interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding detention after having been previously released. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. When ICE first detained Petitioner in February 2025, Petitioner had already acquired his four criminal convictions, yet

ICE determined that he should be released. See ECF No. 6-3; 6-4 (showing an arrest history beginning in 2004 and ending with sentencing in December 2024). Petitioner then went on to live freely – but under supervision – in the U.S for over a year. During that time, Petitioner complied with all conditions of his release and was not newly arrested or convicted. ECF No. 1 at 16. During that time, he also applied for lawful permanent residence. ECF 17-19. These efforts, along with his family and community ties, support his private liberty interest. See Salazar v. Casey, No. 25-CV-2784, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori v. Larose, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). The first Mathews factor thus tilts in favor of Petitioner, whose strong private liberty is strengthened by his compliance with the terms of release and his efforts to obtain permanent immigration status and stability for his family.

**ii. Risk of erroneous deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (quoting Zadvydas, 533 U.S. at 690). Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody hearing to determine whether there is any valid basis for detention after a prior release. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).

Petitioner has been detained for nearly two months on a vague allegation of being subject to mandatory detention, but Respondents point to no changed circumstances that would now render Petitioner subject to § 1226(c)(1)(A). Respondents have not explained why, if one or more of Petitioner's criminal convictions subject Petitioner to *mandatory* detention, ICE released him

in February 2025. The criminal convictions existed when ICE detained and released Petitioner in February 2025, and presumably ICE was aware of them; they did not represent that they only recently became aware of these convictions. Petitioner's prior release required a determination that Petitioner presented neither a danger to society nor a flight risk. Detention without a showing of changed circumstances that would now render Petitioner a danger or flight risk or subject to a new detention authority certainly risks erroneous deprivation of Petitioner's acquired liberty interest.

**iii. Government's interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). In finding mandatory detention constitutional, the Supreme Court found that "Congress, justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as [the noncitizen at issue in Demore] be detained for the brief period necessary for their removal proceedings." Demore v. Kim, 538 U.S. 510, 513 (2003). But requiring the government to provide a valid basis for re-detention before taking a previously-released noncitizen into custody does not undercut the government's interests in effectuating removal and protecting the public. The government interest at stake here is not the detention of Petitioner itself, but rather the government's ability to revoke his conditional liberty without any safeguards to ensure that detention is warranted. The effort and cost required to provide Petitioner with procedural safeguards before re-detention would have been minimal. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents do not oppose a post-deprivation hearing – despite their contention that Petitioner is not entitled to one – which would presumably require no less effort and cost than pre-deprivation

hearing. Moreover, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing. Pinchi v. Noem, 792 F. Supp. 3d at 1036.

**IV. Recommendation**

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without *first* demonstrating that Petitioner is now subject to mandatory detention or that the detention was necessary to protect the community or ensure Petitioner's appearance. The undersigned therefore joins several district courts in concluding that a pre-deprivation hearing was required to satisfy due process. See Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The absence of such pre-deprivation hearing violates Petitioner's due process rights and warrants immediate release.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED;
2. Respondents be ORDERED to immediately RELEASE Petitioner from custody with the same conditions to which Petitioner was subject prior to his detention in June 2026;
    a. At the time of release, Respondents be ordered to return all of Petitioner's property and documents;
    b. The Clerk of Court be directed to serve a copy of any release order to California City Immigration Processing Center;
3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner for any

purpose, absent exigent circumstances, without providing Petitioner at least 7 days' written notice and a pre-detention hearing before a neutral adjudicator where Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or flight risk or that he is subject to a mandatory detention provision;

4. The order not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal; and

5. The Clerk of Court be directed to enter judgment and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 08/20/26

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 cast5925.imm.fnr